IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDITH BLANK | ) |
| CHRISTINE CRAMBLETT | ) |
| JIM GAYDOS | ) |
| DAVID MACKENZIE | ) |
| JUDITH A. MACKENZIE | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2019-cv-_____ |
| | ) |
| THE ISLAMIC REPUBLIC OF IRAN | ) |
|    c/o Ministry of Foreign Affairs, | ) |
|    Khomeini Avenue | ) |
|    United Nations Street | ) |
|    Tehran, Iran | ) |
| | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiffs bring this case against Defendant The Islamic Republic of Iran for damages arising out of the June 25, 1996, terrorist attack on the Khobar Towers complex in Dhahran, Saudi Arabia.  On that day, Hizballah terrorists detonated a 5,000-pound truck bomb outside the complex, which housed United States military personnel.  The blast from this bomb sheared off the entire face of one building of the Khobar Towers complex and shattered windows up to a half mile away.  The blast killed nineteen Air Force servicemen and injured many others, some severely.

Plaintiffs here are the immediate family members of three individual Air Force servicemen who were severely injured in the terrorist attack. They seek damages under the Foreign Sovereign Immunities Act, 28 U.S.C. Section 1605A(c), and under other applicable state and federal law, and move for judgment against Defendant The Islamic Republic of Iran, and in support of their Complaint allege as follows:

I.

## JURISDICTION and VENUE

1. This Court has jurisdiction over this matter and over Defendant pursuant to 28 U.S.C. Sections 1330-1332 and 1605A.

2. This District is the proper venue pursuant to 28 U.S.C. Section 1391(f)(4).

II.

## THE PARTIES

### Plaintiffs

3. Plaintiff Edith Blank is a resident of Texas. She is the mother of Charles Blank, who was injured in the Khobar Towers attack. Charles Blank was a plaintiff in *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018), and this Court awarded him substantial compensatory damages for his injuries. Edith Blank learned of the Khobar Towers attack while she was at work, and was horrified when she saw the images on television news of the destruction. She was extremely concerned about her son. She had just lost her husband four months before that, and felt that if she had lost her son also that would be too much to bear. It

took too long for her to learn that Charles Blank had survived, and the time before she heard was filled with fear and anxiety.  She is and was at all relevant times a United States citizen.

    4.  Plaintiff Christine Cramblett is a resident of Texas.  She is a sister of Charles Blank, who was injured in the Khobar Towers attack.  Charles Blank was a plaintiff in *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018), and this Court awarded him substantial compensatory damages for his injuries.  Ms. Cramblett was very close with her brother Charles and loved and admired him.  She was traveling in Japan when she first heard news of the Khobar Towers attack.  She was immediately deeply concerned and anxious, and did not learn for a day or two that her brother survived the attack.  She is and was at all relevant times a United States citizen.

    5.  Plaintiff Jim Gaydos is a resident of South Carolina.  He is a brother of John Gaydos, who was injured in the Khobar Towers attack.  John Gaydos was a plaintiff in *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018), and this Court awarded him substantial compensatory damages for his injuries.  Jim Gaydos was fourteen and still living at home when he heard of the Khobar Towers attack from his parents.  He was very concerned and suffered anxiety and distress when he heard news of the attack.  After John Gaydos returned from Saudi Arabia and was released from the military hospital where he was treated, Jim went to live with John's family and helped look after him and John's children.  He is and was at all relevant times a United States citizen.

    6.  Plaintiff Judith A. MacKenzie is a resident of Virginia.  She is the mother of Nicholas MacKenzie, who was injured in the Khobar Towers attack.  Nicholas MacKenzie was a plaintiff in *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018), and this Court awarded him substantial compensatory damages for his injuries.  Judith MacKenzie remembers that when

she came home from work on the day of the attack, her husband was on the phone with her son Nicholas' service records spread out before him. Her heart sank and she feared the worst. She learned from her husband exactly what had happened, and that they had no way of knowing yet whether Niccholas had survived. She felt fear and despair, and described it as the worst day of her life. It took another day or two before they received another phone call letting them know that Nicholas had been injured but would likely survive. She is and was at all relevant times a United States citizen.

7. Plaintiff David MacKenzie is a resident of Virginia. He is an older brother of Nicholas MacKenzie. Nicholas Mackenzie was a plaintiff in *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018), and this Court awarded him substantial compensatory damages for his injuries. David was close to his younger brother Nicholas and had always played a protective role toward him. When he heard that Nicholas' residence was attacked he felt helpless and angry. Like his mother Judith MacKenzie, he had to wait a day or two to learn that his brother Nicholas had survived. He is and was at all relevant times a United States citizen.

Defendant

8. Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran"), is a foreign state that has been designated a state sponsor of international terrorism within the meaning of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) and section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780, since January 19, 1984. The Islamic Republic of Iran provides material support and resources to Hezbollah, a politico-paramilitary terrorist organization, by providing it with funding, direction and training for its terrorist activities.

9. The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under the predecessor statute to 28 USC Section 1605A, 28 U.S.C. § 1605(a)(7), to victims of state sponsored terrorism for the acts and actions of defendant Hezbollah in cases before this Court, including *Anderson v. The Islamic Republic of Iran,* 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. The Islamic Republic of Iran,* 18 F. Supp. 2d 62 (D.D.C. 1998). Iran has also been found liable for the same terrorist attack of June 25, 1996, at the Khobar Towers at issue here. *Blais v. Islamic Republic of Iran, et al.*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010); *Akins v. Islamic Republic of Iran*, 332 F. Supp.3d 1 (D.D.C. 2018); *Schooley v. Islamic Republic of Iran*, 17-cv-1376(BAH) (D.D.C. June 27, 2019). Accordingly, defendant the Islamic Republic of Iran is collaterally estopped in this action from denying that it is liable for the acts and actions of Hezbollah in carrying out the terrorist attack at issue here.

10. Defendant Iran sometimes acted through its political subdivision and instrumentality the Iranian Islamic Revolutionary Guard Corps, also known as Pasdaran or IRGC (hereinafter referred to as "IRGC"), which is a military organization and a branch of the Islamic Republic of Iran. The IRGC has evolved into one of the most powerful organizations in Iran. The IRGC functions as an intelligence organization, both within and outside the country of Iran. The IRGC exerts considerable influence on the government policies of Iran. In addition, the IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and Islamic Republic of Iran and is dedicated to the export of Islamic Fundamentalism principles throughout the world through acts of terrorism. The IRGC is the arm through which Iran prepared and oversaw the actions relating to the bomb attack on the Khobar Towers of Dhahran,

Saudi Arabia on June 25, 1996. The IRGC, as an agent and political arm of the Islamic Republic of Iran, performed acts within the scope of its agency, each within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hezbollah for its terrorist activities in Saudi Arabia that caused the injuries to plaintiffs herein.  The IRGC has been found to be liable as a foreign state supporting international terrorism under former 28 U.S.C. § 1605(a)(7) to victims of state sponsored terrorism for the acts and actions of defendant Hezbollah in the cases of Higgins v. The Islamic Republic of Iran, Civ. No. 99-377(RCL) (D.D.C. Sept. 21, 2000), and Surette v. Islamic Republic of Iran, Case No. 01-570 (D.D.C.  November 1, 2002).  Moreover, it has been found liable by this Court for the same terrorist attack at issue here.  Blais v. Islamic Republic of Iran, et al., 459 F. Supp. 2d 40 (D.D.C. 2006); Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006).

11.  Hezbollah was formed by Iran utilizing IRGC assets as an organization to export Islamic fundamentalism to other Middle Eastern countries and the world through acts of terrorism, including, but not limited to, the actions relating to the bomb attack in the Khobar section of Dhahran, Saudi Arabia on June 25, 1996. Hezbollah, acting as an agent of the Islamic Republic of Iran and of IRGC, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, that caused the injuries to the Plaintiffs herein.

III.

STATEMENT OF FACTS

12.  Several years before the terrorist attack at issue here, the Islamic Republic of Iran had begun a program of carefully planned acts of terrorism designed to destabilize governments in the Middle East and export principles of Islamic fundamentalism. Its principal agents and

political subdivisions and arms in this regard were the Iranian Ministry of Information and Security ("MOIS") and the Pasdaran or Iranian Islamic Revolutionary Guard Corps ("IRGC").

13.  In the early 1980's Iran, through MOIS and the IRGC, established Hezbollah in Lebanon as a terrorist organization employing tactics such as kidnapping, torture and murder. The MOIS and the IRGC provided funding, training and equipment to Hezbollah enabling it to pursue and achieve its mission of terrorism.  By the early 1990's, the activities of Hezbollah were no longer limited to Lebanon.  Its operatives were now operating in a number of countries utilizing the tactics taught to them in Iran and the Bekaa Valley in Lebanon at facilities established, operated and supported by the defendant.

14.  In this period, the presence of United States personnel in Saudi Arabia was viewed by the Iranian government as supportive of a Saudi monarchy, which was closely allied with Western governments. In Iran's view, a large-scale terrorist operation designed to kill Americans would expose the corruption of the house of Al-Saud and result in a revolution and the establishment of an Islamic Republic in Saudi Arabia. The Iranian government, acting through MOIS, IRGC, Hezbollah, and Osama bin Laden, began preparations for a bombing of a target associated with American interests.  In 1995, the defendant began months of preparation for such an operation. Hezbollah operatives began to scout potential Arabian targets. Small shipments of explosives were smuggled into Saudi Arabia and stored. An elaborate professional intelligence network was established to carry out the mission.

15.  By June of 1996, the bomb components had arrived in Saudi Arabia, including high explosives, incendiary materials, and sophisticated fuses as well as the tools for the bomb assembly. The Defendant selected and approved a target in Dhahran to be detonated by Hezbollah agents.

16. In the evening of June 25, 1996, two men drove a stolen Mercedes Benz tanker truck containing the bomb into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. They parked the truck 80-100 feet from a building which housed the American personnel. The men drove away in a waiting Chevrolet Caprice, which had also been stolen as a getaway vehicle. A few minutes later, the bomb exploded. The explosion killed dozens of persons including nineteen American servicemen. Hundreds of others were injured and burned. The blast caused structural damage in buildings a quarter mile away.

17. The servicemen and women who were present at the time suffered personal injury and great emotional distress as a result of the terrorist explosion. For most, the psychological wounds continue to this day. Plaintiffs who are close family members suffered great emotional distress when they learned of the attack on their loved ones and in the years afterwards, as well as loss of consortium and solatium damages.

## COUNT I

### ACTION FOR DAMAGES UNDER 28 U.S.C. SECTION 1605A

18. Plaintiffs repeat and incorporate by reference the allegations of all prior paragraphs as though fully set forth herein.

19. Defendant provided material support and resources to Hezbollah, within the meaning of 28 U.S.C. Section 1605A(a), which caused, enabled and facilitated the terrorist attack at the Khobar Towers.

20. That terrorist attack, which resulted in nineteen deaths, was an extrajudicial killing within the meaning of Section 1605A, and also caused great personal injury and damage to many others.

21. Plaintiffs herein are immediate family members of three servicemen injured in the attack. All suffered severe harm, including emotional distress, mental anguish, pain and suffering, loss of companionship and society, and loss of consortium.

22. The conduct of Iran was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

23. Iran is therefore liable for the full amount of plaintiffs' damages and for punitive damages under 28 U.S.C. 1605A(c), jointly and severally.

## COUNT II

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(28 USC Sections 1605A and 1606)

24. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length.

25. The act of terrorism in detonating a bomb outside of the Khobar Towers complex in Dhahran, Saudi Arabia, with the intent to kill and maim Americans and which in fact did kill and severely injure Americans, including Plaintiffs' family members, constituted extreme and outrageous conduct on the part of defendant Iran and Hizballah members and agents. The extensive planning and preparation which went into the attack further underscores the malicious and heinous nature of the terrorism involved.

26. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizballah members, whose acts were funded and directed by Iran and by the IRGC, all Plaintiffs herein suffered severe emotional distress, including extreme mental anguish, emotional distress, and pain and suffering.

27. Defendant is directly and vicariously responsible for Hizballah's actions because it funded, trained, and directed Hizballah and acted in concert with Hizballah in sponsoring the terrorist attack on Khobar Towers.  It is responsible under state and federal substantive law as made applicable by 28 U.S.C. Section 1606 as well as under 28 U.S.C. Section 1605A.

28. All Plaintiffs were intended and directly affected victims of defendant's plan to intentionally inflict emotional distress on the victims of their terrorist acts, and are entitled to compensation under applicable law.

29. For the reasons stated above, Defendant is liable to all Plaintiffs for intentional infliction of emotional distress.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendant in an amount to be determined at trial.

**Count III**

**SOLATIUM, PAIN AND SUFFERING AND LOSS OF CONSORTIUM**

28 USC SECTION 1605A(c)

30. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth at length.

31  As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded, directed and materially supported and assisted by defendant Iran and by the IRGC, Plaintiffs who were immediate family members of the servicemen injured in the Khobar Towers attack were deprived of the assistance, society and companionship of their family members for extended periods of time.  Plaintiffs suffered severe

emotional distress and mental anguish as a result of the injuries to their loved ones and as a result of being deprived of their companionship. They are still deprived of the assistance, society, and companionship of the healthy and vibrant young men they knew and loved prior to the terrorist attack described above.  This has caused them to suffer, among other things, extreme mental anguish and emotional and physical pain and suffering.

32.  As a result, all plaintiffs herein are entitled to damages for solatium and/or loss of consortium under applicable law.

33. For these reasons, Defendant is liable to plaintiffs in an amount to be determined at trial.

<div style="text-align:center">

**Count IV**

**<u>PUNITIVE DAMAGES</u>**

<u>28 USC Section 1605A (c)</u>

</div>

34.  Plaintiffs incorporate by reference all prior paragraphs above as if fully set forth at length.

35.  The actions of defendant acting in concert with IRGC and Hizballah to carry out their unlawful objectives were malicious and willful, wanton and reckless in their disregard for human life and limb, and caused severe injuries to Plaintiffs and untold pain and suffering to those Plaintiffs who were the immediate family members and loved ones of the injured servicemen and servicewomen.

36.  The actions of Hizballah were undertaken at such time as they were operating for and in the service of Defendant Iran and the IRGC, and in concert with them, and which are therefore both vicariously and directly liable to plaintiffs.

37. For the reasons stated above, Defendant Iran is liable to plaintiffs for punitive damages. Plaintiffs demand an award of punitive damages against defendant in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant judgment in their favor and against Defendant Iran on Counts I through IV, and grant Plaintiffs:

A. Compensatory damages in favor of Plaintiffs as against Defendant in amounts to be determined by the Court;

B. Punitive Damages in favor of Plaintiffs as against defendant in an amount to be determined by the Court;

C. Reasonable costs and expenses;

D. Reasonable attorneys' fees; and

E. Such other and further relief as the Court may determine to be just and equitable in the circumstances.

Respectfully submitted,

/s/ Paul G. Gaston
Paul G. Gaston (DC Bar # 290833)
LAW OFFICES OF PAUL G. GASTON
1901 Pennsylvania Avenue, NW, Suite 607
Washington DC 20006
202-296-5856
*paul@gastonlawoffice.com*

*Attorney for Plaintiffs*

DATED:   December 6, 2019